# Application of 18 U.S.C. §§ 203 and 205 to Federal Employees Detailed to State and Local Governments

Environmental Protection Agency (EPA) is correct in its view that detailing its employees to important positions in state agencies, the duties of which may require them to represent the state before the EPA, is integral to the substantive environmental programs that EPA administers.

Sections 203 and 205 of Title 18 were not intended to limit substantively the uses federal agencies may make of their employees, and a federal employee is performing "official duties," within the meaning of those provisions, when involved in a task that is integral to a substantive federal program.

Sections 203 and 205 do not prohibit EPA employees, detailed to a state agency pursuant to the Intergovernmental Personnel Act, from representing that agency before the EPA in the course of their assigned duties.

March 17, 1980

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, ENVIRONMENTAL PROTECTION AGENCY

This responds to your request that we reconsider the opinion, expressed in former Assistant Attorney General Rehnquist's letter of March 12, 1971, about the application of two conflict of interest statutes to federal employees detailed to states under the Intergovernmental Personnel Act, 5 U.S.C. §§ 3371–3376. Those two conflict of interest statutes, 18 U.S.C. §§ 203 and 205, prohibit Executive Branch employees from representing any party other than the United States before any federal agency in connection with a matter in which the United States has an interest.[1] Neither of these statutes applies, however, if the employee is acting in "the proper discharge of his official duties." In his 1971 letter, former Assistant Attorney General Rehnquist said that federal employees detailed to states under the Intergovernmental Personnel Act were not acting in the proper discharge of their official duties within the meaning of §§ 203 and 205 if they represented those states before a federal agency.

---

[1] 18 U.S.C. § 203 provides in part:
(a) Whoever, otherwise than as provided by law for the proper discharge of official duties, directly or indirectly receives or agrees to receive, or asks, demands, solicits, or seeks, any compensation for any services rendered or to be rendered either by himself or another—
* * * * *

**Continued**

The Environmental Protection Agency (EPA) details employees to state and local governments under the authority of the Intergovernmental Personnel Act and several environmental statutes. You specifically mention the Clean Air Act, 42 U.S.C. §§ 7401–7642 (Supp. III 1979), the Clean Water Act, 33 U.S.C. §§ 1251–1376, the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j–9, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6987, and the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136–136y. The detailed employees are assigned to aid the states in carrying out their responsibilities under these various environmental statutes. We understand that the employees' duties are specified in agreements signed between EPA and the state agencies, and in a briefing given to the employees.

A federal employee can, while acting on behalf of another party, have purely ministerial contacts with a federal agency without violating § 203 or § 205. *See* Memorandum Opinion for the Acting General Counsel, Nuclear Regulatory Commission, 2 Op. O.L.C. 313, 316–317 (1978); Federal Personnel Manual, ch. 334, subch. 1–9b, at 334–6 & n.1 (1973). But if the employee has any dealings with the government in an adversary context—that is, any contacts about a matter in which the Government and the party on whose behalf the employee is acting have inconsistent or potentially inconsistent interests—then the employee is representing that party and, unless otherwise excepted, is

(2) at a time when he is an officer or employee of the United States in the executive, legislative, or judicial branch of the Government . . .

in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court-martial, officer, or any civil, military, or naval commission,

·    ·    ·    ·    ·

Shall be fined not more than $10,000 or imprisoned for not more than two years or both; and shall be incapable of holding any office of honor, trust, or profit under the United States.

18 U.S.C. § 205 provides, in part:

Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, including the District of Columbia, *otherwise than in the proper discharge of his official duties—*

·    ·    ·    ·    ·

(2) acts as agent or attorney for anyone before any department, agency, court, courtmartial, officer, or any civil, military, or naval commission in connection with any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest—

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

It may appear at first glance that § 203(a) proscribes all services rendered in connection with a proceeding before a federal agency, while § 205 prohibits only acting "as agent or attorney." But the *Department of Justice has consistently interpreted § 203 to apply only to "services rendered . . . before any department [or] agency"—that is,* to representative activities comparable to acting as an agent or attorney. *See* Memorandum of Attorney General Regarding Conflict of Interest Provisions of Public Law 87–849, reprinted in 18 U.S.C. § 201 note at 1029 (1976); S. Rep. No. 2213, 87th Cong., 2d Sess. 9–11 (1962); Perkins, *The New Federal Conflict of Interest Law,* 76 Harv. L. Rev. 1113, 1144–45 (1963).

violating §§ 203 and 205. We advised you of this interpretation of §§ 203 and 205. You replied that EPA's detailed employees cannot be confined to ministerial contacts with EPA. You said that EPA's ability to cooperate with the states in the way Congress envisioned will be seriously impaired if detailed employees cannot represent states before the EPA in contexts that are potentially adversary. You now ask us to reconsider the 1971 opinion and to say that such a detailed EPA employee would be engaged in "the proper discharge of official duties" and therefore may represent a state before the EPA.

For the reasons we state below, we accept your judgment that it is integral to the statutory schemes established by Congress that detailed EPA employees be able to represent states, from time to time, in dealings with EPA. We believe that a federal employee performing a task that is integral to the statutory scheme administered by the employee's agency is engaged in "the proper discharge of his official duties" within the meaning of §§ 203 and 205. For these reasons, as long as EPA employees detailed under the statutes you mention are performing their assigned duties, §§ 203 and 205 do not prohibit them from representing states in dealings with the EPA. A federal employee can be assigned to a state under the Intergovernmental Personnel Act, however, whenever he will be performing "work of mutual concern to his agency and the State or local government that [the federal agency] determines will be beneficial to both." 5 U.S.C. § 3372 (a) (Supp. III 1979). "Work of mutual concern" will not always be work integral to a substantive federal program. Thus we have no occasion to consider, at this time, whether every federal employee detailed to another entity under the Intergovernmental Personnel Act can represent that entity in dealings with the federal government.

### I. The Role of Detailed EPA Employees in Implementing Environmental Statutes

We agree with your judgment that detailing EPA employees to important positions in state agencies is integral to the substantive environmental programs Congress enacted. These programs encourage, and require, EPA to provide technical assistance to the states. In approving the Safe Drinking Water Act, for example, the House committee commented: "[I]t is abundantly clear that additional Federal assistance, research, and support is necessary in order to enable State and local efforts to provide safe water to be successful." H.R. Rep. No. 1185, 93d Cong., 2d Sess. 9 (1974). *See also id.* at 38; S. Rep. No. 1196, 91st Cong., 2d Sess. 4 (1970) (Clean Air Act). In particular, Congress knew that earlier environmental programs had foundered because state agencies lacked the expertise they needed to implement the programs effectively. H.R. Rep. No. 1146, 91st Cong., 2d Sess. 5 (1970); Stewart, *Pyramids of Sacrifice? Problems of Federalism in Mandating State Imple-*

*mentation of National Environmental Policy,* 86 Yale L. J. 1196, 1201 (1977). Each of the statutes you mentioned in your January 30 letter authorizes the EPA to detail employees to provide this expertise. *See* 42 U.S.C. § 7601(b) (Clean Air Act); 33 U.S.C. § 1361(f) (Clean Water Act); 42 U.S.C. § 300j-9(c) (Safe Drinking Water Act); 42 U.S.C. § 6981(c)(4) (Resource Conservation and Recovery Act); 7 U.S.C. § 136u (Federal Insecticide, Fungicide, and Rodenticide Act). You have told us that in EPA's judgment, Congress' intentions cannot be fulfilled unless detailed EPA employees occupy important positions in state agencies—positions in which they will be involved in the central functions of those agencies. Congress did not expressly require EPA to detail its employees to important positions in state agencies. But Congress directed EPA to provide technical assistance and, in framing the environmental laws administered by EPA, expressly or implicitly authorized detailing as one way of doing so. In view of these indications of Congress' intentions, we accept EPA's judgment that detailing employees to important positions in state agencies is integral to the success of the programs it administers.

In many programs, employees involved in the central functions of state agencies might not have to deal with the federal government, or might not have to deal with it in an adversary or representational context. EPA's programs, however, are not among these. One of the central functions of state agencies under federal environmental laws is to have close, ongoing, substantive contacts of a somewhat adversary nature with EPA. It is a commonplace, for example, that the environmental statutes you mention in your letter establish a "delicate partnership" between the EPA and state environmental agencies. *See, Save the Bay, Inc.* v. *Administrator of the EPA,* 556 F.2d 1282, 1284 (5th Cir. 1977) (Clean Water Act). The legislative history of the Safe Drinking Water Act describes it as "a cooperative effort in which the Federal government assists, reinforces, and sets standards for the State and local efforts . . . [T]he Federal government must bear a shared responsibility with State and local governments." H.R. Rep. No. 1185, 93d Cong., 2d Sess. 8, 9 (1974). Congress considered this partnership to be a central feature of these statutes. *See, e.g.,* H.R. Rep. No. 294, 95th Cong., 1st Sess. 1 (1977) (Clean Air Act Amendments); S. Rep. No. 1196, 91st Cong., 2d Sess. 4, 12, 21 (1970) (Clean Air Act); H.R. Rep. 1491, 94th Cong., 2d Sess. 31 (1976) (Resource Conservation and Recovery Act) (suggesting that "federal-state relationship" is the "key" to Act); *id.* at 5, 24–25, 30. The statutes themselves reveal the details of the relationship between EPA and the states; unsurprisingly, continual substantive contacts are a vital feature of it. Moreover, the statutes envision that EPA and the states will often have divergent interests, so their contacts will necessarily be somewhat adversary.

Under the Clean Water Act, for example, EPA initially has the authority to issue the permits that a polluter must have before it discharges effluents. 33 U.S.C. §§ 1311(a), 1342(a). Once a state has established an overall permit program that meets federal standards, 33 U.S.C. § 1342(b), it can issue these permits itself. 33 U.S.C. § 1342(e)(1). The EPA, however, can veto individual state permits, 33 U.S.C. § 1342(d), and can revoke the state's authority to issue permits if the state program consistently fails to meet federal standards, 33 U.S.C. § 1342(c)(3). As you note in your January 30 letter, Congress foresaw that in administering this program the EPA and the state agencies would have frequent substantive contacts of an adversary sort. *See, e.g.,* S. Rep. No. 414, 92d Cong., 1st Sess. 7–10 (1971).

The Resource Conservation and Recovery Act provides, in a roughly similar fashion, that a state may take over the administration of the hazardous waste disposal program from the federal government, unless the EPA determines that the state program is inadequate. 42 U.S.C. § 6926(e). Congress established this relationship because it realized that federal and state interests would not always coincide. *See* H.R. Rep. No. 1491, 94th Cong., 2d Sess. 30 (1976). And Congress envisioned close and continual contacts between federal and state agencies. *See id.* at 5. The Safe Drinking Water Act establishes a scheme that is similar in many respects to that of the Resource Conservation Act. *See* 42 U.S.C. §§ 300g–2, 300g–3. Congress thought that while "cooperation will be the rule," the EPA would act as a check on the state agencies; the House committee attempted to specify the scope of EPA review. H.R. Rep. No. 1185, 93d Cong., 2d Sess. 2, 21 (1974). The Federal Insecticide, Fungicide, and Rodenticide Act provides for a relationship between the EPA and the states that somewhat resembles the Clean Water Act's permit program. *See* 7 U.S.C. § 136v. *See also* 7 U.S.C. § 136p (in an emergency, EPA can exempt state agency from provisions of Act).

Other aspects of these statutes also contemplate continual substantive contacts between state and federal agencies. Under the Clean Water Act, states can establish water quality standards but EPA reviews them. 33 U.S.C. § 1313. State implementation plans under the Clean Air Act are also subject to EPA review and revision. 42 U.S.C. § 7410. Again, Congress envisioned a somewhat adversary relationship. *See* H.R. Rep. No. 294, 95th Cong., 1st Sess. 27 (1977); S. Rep. No. 1196, 91st Cong., 2d Sess. 21 (1970). Similarly, as your letters note, EPA can delegate to the states its power under the Clean Water Act to make grants to local governments to construct waste treatment facilities. 33 U.S.C. §§ 1281–1293(a). As you point out, the Act itself provides that "[i]t is the policy of Congress that the States manage the construction grant program." 33 U.S.C. § 1251(b). But you have advised us that EPA must supervise the

states to ensure that they are discharging their responsibilities under the program.

Congress' reasons for establishing this sort of relationship between the EPA and state governments lie deep in the history of environmental legislation. For practical and legal reasons, state and local governments must plan and implement many environmental programs. For example, efforts to combat pollution must be coordinated with traffic controls and land-use regulation. In those areas, the states' knowledge and authority predominate. *See* Stewart, *supra,* at 1201; Tripp, *Tensions and Conflicts in Federal Pollution Control and Water Resource Policy,* 14 Harv. J. Legis. 225, 253–57, 278–80 (1977). But for technical and political reasons, state governments have often been unable or unwilling to perform their tasks effectively; the federal government must induce them to do so. *See, e.g.,* S. Rep. No. 414, 92d Cong., 1st Sess. 4–5 (1971) (Clean Water Act); Stewart, *supra,* at 1201–02. Thus close and somewhat adversary contacts between EPA and state environmental agencies are an essential, not an incidental, aspect of environmental legislation. Detailing EPA employees to important positions in state agencies is integral to the programs created by that legislation. It follows, from the close, ongoing, adversary relationship which those programs establish between the federal and state agencies, that it is also integral to the programs that detailed EPA employees be able to represent the states in dealings with the EPA.

## II. "Official Duties" Under §§ 203 and 205

For several reasons, we believe that federal employees are performing "official duties," within the meaning of §§ 203 and 205, when they are involved in tasks that are integral to a substantive federal program. The legislative history of the "official duties" exception to §§ 203 and 205 is obscure, but the term "official" suggests that those statutes are aimed primarily at actions taken by federal employees in their private capacities. The House committee that studied the most recent amendment to §§ 203 and 205 said that they were designed to prevent any "conflict between private interests of a Government employee and his duties as an official," and that the "evident reason" for the restriction now found in § 205 was to prevent employees "from using . . . influence in support of private causes." H.R. Rep. No. 748, 87th Cong., 1st Sess. 6, 21 (1961). The Senate committee referred to § 205 as a "bar against a Government employee's private represent itional activities." S. Rep. No. 2213, 87th Cong., 2d Sess. 11 (1962). *See* Perkins, *The New Federal Conflict of Interest Law,* 76 Harv. L. Rev. 1113, 1143 (1963).[2]

---

[2] Activities on behalf of a state or some other unit of government can be "private" if they are no part of a federal employee's job. We believe that detailed EPA employees' activities on behalf of the state agencies are not private, but that is true only because EPA has directed the employees to engage

Continued

Moreover, nothing in the background or legislative history of §§ 203 and 205 suggests that they were intended substantially to limit the uses federal agencies may make of their employees. In this respect, they may contrast with, for example, 18 U.S.C. § 208 (Supp. III 1979), which restricts federal employees' participation in matters in which they have a financial interest. The "official duties" exception in fact suggests that Congress did not intend to limit the ability of federal agencies to assign their employees to tasks that would involve their representing other parties. In general, had Congress wanted significantly to restrict the manner in which an agency uses its employees, Congress is unlikely to have chosen as its means a criminal statute, directed at the employees themselves, and containing an exception for "the proper discharge of official duties." [3]

For these reasons, we do not believe that §§ 203 and 205 can be read to prohibit a federal agency from assigning its employees to tasks that are integral to the programs for which it is responsible, even if those employees must, in the course of carrying out their assignments, represent other parties before the federal government. [4] As we have said, we

---

in such activities. That acts are done on behalf of another government would not automatically exempt them from §§ 203 and 205. In saying this, however, we do not wish to foreclose the possibility that actions done on behalf of another unit of government might, in some circumstances, have a different status under the conflict of interest laws. This is an issue we do not reach.

[3] Section 105 of the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, 88 Stat. 2208 (1975), permits federal employees detailed to Indian tribes under the Intergovernmental Personnel Act, 5 U.S.C. § 3371(2)(c), to act as agents or attorneys on behalf of such tribes, notwithstanding § 205. Section 105(j) provides in part:

> Anything in sections 205 and 207 of title 18 to the contrary notwithstanding, officers and employees of the United States assigned to an Indian tribe as authorized under [the Intergovernmental Personnel Act] and former officers and employees of the United States employed by Indian tribes may act as agents or attorneys for or appear on behalf of such tribes in connection [with] any matter pending before any department, agency, court, or commission, including any matter in which the United States is a party or has a direct and substantial interest.

25 U.S.C. § 450i(f). (Section 207 of Title 18 imposes certain restrictions on former government employees' appearances before government agencies.) It might be argued that Congress' exempting this class of detailed employees from the prohibitions of § 205 implies that all other detailed employees are subject to those prohibitions. For several reasons, however, we do not adopt that view.

The exemption was added, by the House Committee on Interior and Insular Affairs, to a bill that had passed the Senate. *See* H.R. Rep. No. 1600, 93d Cong., 2d Sess. 21 (1974). The House committee commented simply that §§ 205 and 207 "would be inappropriate to the circumstances of" the detailing arrangements it was considering. *Id.* at 21. Apparently it did not consider the issue at length; for example, it neglected to exempt detailed employees from § 203, an evident oversight. Apparently it was most concerned with the exemption from § 207. *See id.* at 16-17. The Committee on Interior and Insular Affairs also gave no indication that it was aware of other programs involving detailed employees which might similarly claim to be hampered by §§ 203 and 205. The Committee did not seem to be guided by any coherent or principled conception of the coverage of the conflict of interest laws of the breadth of the "official duties" exception.

Under these circumstances, we cannot say that in enacting this exemption, Congress meant to express a considered view that no other tasks performed by detailed employees are "official duties" within the meaning of §§ 203 and 205. It seems more likely that the House Committee was alerted to the danger that § 205 might perhaps interfere with its substantive program of aiding Indian tribes and prudently acted to remove the danger, without considering the implications of its actions. Similarly, there is no sign that when Congress passed the Act that it thought it was legislating about any subject other than Indians.

[4] With your approval, we have discussed this matter with the Office of General Counsel at the Office of Personnel Management. The Office of General Counsel concurs in our interpretation of these

Continued

accept your judgment that EPA employees detailed to important state positions are performing tasks integral to EPA's programs. Sections 203 and 205 therefore do not prohibit such employees from representing the state before the EPA in the course of their assigned duties.

There is an additional reason for concluding that the activities of EPA's detailed employees should not be circumscribed by §§ 203 and 205. The purpose of applying §§ 203 and 205 to detailed EPA employees would be to prevent them from using, on behalf of the state to which they are detailed, whatever influence they have within the EPA. *See* H.R. Rep. No. 748, 87th Cong., 1st Sess. 21 (1961). As we have discussed, however, environmental legislation places EPA and the states in a "delicate partnership." Often Congress attempted to specify in some detail the extent to which EPA was to review the actions of the state agencies. *See, e.g.,* H.R. Rep. No. 1185, 93d Cong., 2d Sess. 21 (1974) (Safe Drinking Water Act); H.R. Rep. No. 1491, 94th Cong., 2d Sess. 24–25 (1976) (Resource Conservation and Recovery Act); *compare* H.R. Rep. No. 911, 92d Cong., 2d Sess. 127 (1972) (Clean Water Act) *with* S. Rep. No. 414, 92d Cong., 1st Sess. 71 (1971) (Clean Water Act). In framing environmental legislation, Congress established an elaborate relationship between the federal and state agencies; we believe that questions about the degree to which those agencies may properly influence each other should be resolved by examining the policies underlying this relationship Congress has so carefully structured,[5] instead of by resorting to conflict of interest statutes.

For these reasons, we believe that EPA employees detailed to state agencies under the statutes you mention may, in the course of performing their assigned duties, represent the states in dealings with the EPA.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

conflict of interest statutes as they affect the operation of the Intergovernmental Personnel Act. It has advised us that the applicable provisions of the Federal Personnel Manual, ch. 334, subch. 1–9b, at 334–6, will be revised to reflect our interpretation.

[5] It can be argued that the environmental statutes themselves restrict the informal influence that EPA may exert on state agencies. *See* Case Comment, *Jurisdiction to Review Informal EPA Influence Upon State Decisionmaking under the Federal Water Pollution Control Act,* 92 Harv. L. Rev. 1814 (1979). Presumably, this would include influence exerted by exchanging or detailing employees. We of course express no opinion about the soundness of this view.